# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### 1:09cv181

| | | |
|---|---|---|
| APRIL HALL STACEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**THIS MATTER** is before the court pursuant to 28, United States Code, Section 636(b), pursuant a specific Order of Referral of the district court, and upon plaintiff's Motion for Summary Judgment, the Commissioner's Motion for Summary Judgment, and the Commissioner's Response to Plaintiff's Motion for Summary Judgment. The Commissioner's response was properly filed in this case inasmuch as plaintiff failed to file her brief within the initially provided, requiring the Commissioner to file his summary judgment motion and brief before plaintiff. As the burden is on the plaintiff as the proponent of this appeal, the filing of the Response was entirely appropriate as the issues were not framed until plaintiff filed her brief. Having carefully considered such motions and reviewed the pleadings, the court enters the following findings, conclusions, and recommendation.

### FINDINGS AND CONCLUSIONS

## I.    Administrative History

Plaintiff filed an application for a period of disability and Disability Insurance Benefits as well as Supplemental Security Income. Plaintiff's claim was denied both initially and on reconsideration; thereafter, plaintiff requested and was granted a hearing before an administrative law judge ("ALJ"). After conducting a hearing, the ALJ issued a decision which was unfavorable to plaintiff, from which plaintiff appealed to the Appeals Council. Plaintiff's request for review was denied and the ALJ's decision affirmed by the Appeals Council, making the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner"). Thereafter, plaintiff timely filed this action.

## II.   Factual Background

It appearing that the ALJ's findings of fact are supported by substantial evidence, the undersigned adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III.  Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not de novo, Smith v.

Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, supra. Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if supported by substantial evidence. Hays v. Sullivan, supra.

## IV.     Substantial Evidence

### A.     Introduction

The court has read the transcript of plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the extensive exhibits contained in the administrative record. The issue is not whether a court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the ALJ is supported by substantial evidence. The undersigned finds that it is.

### B.     Sequential Evaluation

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title II pursuant to the following five-step analysis:

a.   An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

b.   An individual who does not have a "severe impairment" will not be found to be disabled;

c.   If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d.   If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e.   If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R. 404.1520(b)-(f). In this case, the Commissioner determined plaintiff's claim at the fifth step of the sequential evaluation process.

## C.   The Administrative Decision

At step one of the sequential evaluation process, the ALJ found that plaintiff had not engaged in substantial gainful activity since her alleged onset date of November 22, 2000. Transcript (hereinafter "Tr."), at p. 20. At step two, the ALJ found that Plaintiff had severe impairments of depression, anxiety, obsessive compulsive disorder, and poly-substance abuse. Id. At step three, the ALJ found that

4

these impairments, either alone or in combination, did not rise to the level of a listed impairment.  Id.  The ALJ thenfound that plaintiff had the residual functional capacity (hereinafter "RFC") to perform work at all exertional levels and could perform detailed, but not complex, instructions in a low stress setting,defined as occasional changes in the work setting.  Tr., at p. 21.  He also found that she could not be exposed to crowds and should deal with things rather than people, in a job that didnot involve production-rate pace work.  Id.  The ALJ further found that when using drugs, plaintiff could miss fifteen minutes of work one day and four hours the next day,which would occur on a daily basis.  Id.  At step four, the ALJ found that plaintiff could not perform her past relevant work. Tr., at p. 25 . At step five, the ALJfound that there were no jobs that existed in significant numbers in the national economy that plaintiff could perform.  Id.

After completing the sequential evaluation process, the ALJ then evaluated plaintiff's claim without the effects of her substance abuse. Tr., at pp. 26-28. The ALJ found that absent her substance abuse (which appears to have involved cannabinoids, cocaine, benzodiazepines, amphetamines, methadone, and abuse of alcohol, see Tr., at p. 24), plaintiff would continue to have a severe impairment or combination of impairments. Tr., at p. 26. The ALJ also found that without substance abuse, plaintiff would not have an impairment or combination of impairments that met or medically

equaled a listed impairment. Id. The ALJ further found that without substance abuse plaintiff would have the RFC to perform work at all exertional levels, id., as there was no evidence of any exertional impairments. The ALJ further found that plaintiff could perform work involving detailed, but not complex, instructions in a low-stress setting, defined as occasional changes in the work setting. Id. He also found that she should not be exposed to crowds and should deal with things rather than people, involving no production-rate pace work. Id.

The ALJ then found that without substance abuse plaintiff would still be unable to perform her past relevant work, Tr., at p. 27, and that in any event, without substance abuse she could perform a significant number of jobs existing in the national economy. Id. Accordingly, the ALJ found that plaintiff was not disabled from November 22, 2000, her alleged onset date, through November 6, 2006, the date of his decision. Tr., at 28.

**D.     Discussion**

**1.     Plaintiff's Assignments of Error**

Plaintiff has made the following assignments of error:

**I.      The ALJ failed to consider all of claimant's limitations, including those that are "not severe," in determining claimant's residual functional capacity; and**

**II.     The ALJ failed to comply with the requirements set forth in 20 CFR §§ 404.1535(B)(2) and 416.935(B)(2), in**

**that he failed to define what specific limitations would remain in the event claimant ceased abuse of drugs and/or alcohol.**

See Plaintiff's Motion for Summary Judgment (#26), at p. 1. Plaintiff's assignments of error will be discussed *seriatim*.

### 2. First Assignment of Error

In her first assignment of error, plaintiff contends that the ALJ failed to consider all of claimant's limitations, including those that are "not severe," in determining claimant's residual functional capacity. Review of the ALJ's decision and the administrative record lends no support to such contention.

#### a. Failure to Include Paranoia as a Severe Impairment

First, plaintiff first argues that the ALJ failed to find her paranoia to be a severe disabling condition after having discussed such condition multiple times in his decision and accounted for it in his RFC assessment. Plaintiff's Brief, at pp. 5 & 9. Inasmuch as the ALJ found that plaintiff had other severe impairments at the second step of the sequential evaluation process, and then adequately accounted for such condition in his RFC assessment in a manner supported by the record, such failure to include such condition as a severe impairment does not provide a basis for remand or reversal.

Declining to explicitly list plaintiff's paranoia as a severe impairment was harmless error because the ALJ found that Plaintiff had severe impairments of depression, anxiety, obsessive compulsive disorder, and poly-substance abuse. Tr., at pp. 20 & 26. Such findings advanced the ball in the sequential evaluation process because when an ALJ finds one severe impairment, all impairments both severe and non-severe must be considered in determining RFC. As the district court held in Kelly v. Astrue, 2009 WL 1346241 (E.D.N.C. May 12, 2009),[1]

> it is not error for an ALJ not to make a determination regarding the severity of all of a claimant's impairments where the ALJ finds the claimant has a severe impairment or combination of impairments, and the ALJ considers the omitted impairments at later steps in the sequential evaluation.

Id., at *2 n.1. Because the ALJ included paranoia in his RFC assessment and in his evaluation without the effects of substance abuse, such error is harmless Further, there is substantial evidence of record supporting the ALJ's conclusion that plaintiff's paranoia did not impose functional limitations beyond those specified in the ALJ's RFC finding. See Tr., at pp. 217, 218, 219, and cf. 43, 46,48-49, 171,172, 207, 208, 305-306, 309, 680, 698, 702, & 705.

---

[1]     Due to the limits of Electronic Case Filing, a copy of such unpublished decision is placed in the electronic docket through incorporation of the Westlaw citation.

###### b. Failure to Consider Post-Traumatic Stress Disorder, Bipolar Disorder, Attention Deficit Disorder, and Panic Disorder

Plaintiff next argues that the record shows that she experienced post-traumatic stress disorder (hereinafter "PTSD"), bipolar disorder, attention deficit disorder, and panic disorder, and that the ALJ did not consider the effect of these impairments, either alone or in combination, in his RFC assessment. Plaintiff's Brief, at 4-5, 9. While plaintiff correctly points out that the ALJ did not explicitly discuss all of these impairments in his RFC assessment, remand or reversal is not warranted because substantial evidence of record indicates record shows that without the effects of plaintiff's substance abuse, these other impairments -- either alone or in combination -- do not impose functional limitations beyond those found by the ALJ.

From the outset, the ALJ "has no duty to consider an impairment absent an allegation of such impairment and record evidence of a resultant limitation or restriction." Kelly, 2009 WL 1346241 at *10 (citing SSR 96-8p). An ALJ is not tasked with the "impossible burden of mentioning every piece of evidence" that may be placed into the Administrative Record. Parks v. Sullivan, 766 F.Supp. 627, 635 (N.D.Ill.1991). It is plaintiff's burden to provide the Commissioner with evidence showing how an impairment affects functioning. 20 C.F.R. §§404.1512(c), 416.912(c). As discussed below, the evidence of record shows that any PTSD, bipolar

disorder, attention deficit disorder, and panic disorder plaintiff may have suffered from, did not, in the absence of substance abuse, impose functional limitations beyond those otherwise found by the ALJ.

### 1.	Bipolar Disorder

Plaintiff alleged an inability to work due to bipolar disorder. See Tr., at p. 112. Upon discharge from the Rutherford Hospital on October 6, 2003, Dr. Mauney reported that Plaintiff's mood was fairly stable and that she had improved symptomatically. Tr., at p. 306. Dr. Mauney noted that Dr. Parks, who recently saw plaintiff, did not notice any psychotic or significant mood symptoms and found that plaintiff was doing well. Id.. Upon discharge from the Gaston Memorial Hospital on October 4, 2004, Plaintiff reported her mood as "feeling fine." Tr., at p. 378. While Dr. Ratcliffe noted on June 15, 2005, that bipolar disorder with schizoaffective should be considered, Dr. Ratcliffe also stated that both of these diagnoses could still be influenced by past methamphetamine use, which lasted two-and-a-half years. Tr., at 484. Dr. Ratcliffe noted that as plaintiff "gradually clears up from this," her diagnosis or clinical condition may change. Tr., at 484.

### 2.	ADD

Regarding plaintiff's alleged attention deficit disorder, although treatment notes made reference to attention deficit disorder, see Tr., at pp. 268, 270, & 272, and plaintiff reported to Dr.Ratcliffe on July 26, 2005, that she had "some problems" with attention and not being able to focus, she also reported that she was treated with Adderall XR, which "helped her focus," "get more accomplished," and made her "able to work." Tr., at p.483.

A mental status exam performed after plaintiff had been in cannabis abuse remission for two weeks, revealed that plaintiff was attentive. Tr., at 705. Further, as the ALJ noted , Tr., at p. 20, plaintiff testified that she was able to help her son with his homework. Tr., at p. 46.

### 3. Panic Disorder

With respect to plaintiff's alleged panic disorder, the ALJ considered plaintiff's testimony that she experienced panic attacks, Tr., at p. 21, but found that her panic attacks did not impose disabling limitations. Plaintiff reported to Dr. Mauney in May 2004 that she experienced only occasional panic attacks. Tr., at p. 211. She also noted that she was prescribed *Klonopin* for her panic attacks which had helped. Tr., at p. 211. The ALJ also found that on August 23, 2004, Dr. Feir assigned plaintiff a Global Assessment of Functioning (hereinafter "GAF") score of 65, indicating some mild symptoms but "generally functioning pretty well." Tr., at pp.713-714. By

October 22, 2004, it was reported that plaintiff seemed to be "coping fairly well." Tr., at p. 705.

### 4.    PTSD

As to PTSD,  Dr. Crummie's treatment notes include consideration of plaintiff's PTSD, Tr., at pp. 202 & 688, bipolar disorder, Tr., at pp. 205 & 206, panic disorder, Tr., at pp. 208 & 682, and attention deficit disorder.  Tr., at p. 208.  Dr. Crummie nonetheless opined that plaintiff was not disabled, Tr., at pp.  207, 680, and plaintiff agreed with such assessment.  Tr., at p. 207.

### c.    Conclusion as to First Assignment of Error

Failure to discuss all of the impairments that could be found in a 700 page record does not necessarily mean that the ALJ did not consider the effects of these impairments on plaintiff's ability to function; rather, the ALJ must issue a decision that is "sufficient to allow the court to conclude that the ALJ considered the claimant's medical condition as a whole." Nuckles v. Astrue, 2009 WL 3208685, at *10 (E.D.N.C. Oct. 5, 2009).[2]

The ALJ is solely responsible for determining the RFC of a claimant.  20 C.F.R. § 404.1546(c).  In determining RFC, the ALJ must consider the functional limitations

---

[2]    Due to the limits of Electronic Case Filing, a copy of such unpublished decision is placed in the electronic docket through incorporation of the Westlaw citation.

and restrictions resulting from the claimant's medically determinable impairments. S.S.R. 96-8p. Inasmuch as RFC is determined at the fourth step of the sequential evaluation process, the burden is on the claimant to establish that he or she suffers from a physical or mental impairment which limits functional capacity. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

When an ALJ finds at least one severe impairment, all impairments, both severe and non-severe, are considered in assessing a claimant's RFC. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(2); SSR 96-8p. As the ALJ found that plaintiff had other severe impairments, "the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence." Pompa v. Comm'r of Social Security, 2003 WL 21949797, at *1 (6th Cir. Aug. 11, 2003).[3] In order for an impairment to be severe it must significantly limit a Plaintiff's ability to perform basic work activities. See 20 C.F.R. § 404.1520(c). Here, plaintiff has failed to identify how any of the impairments she contends were severe resulted in work-related limitations greater than those found by theALJ during the relevant time period.

Here, the ALJ's RFC assessment shows that he considered the entire record. In making his RFC finding without the effects of substance abuse, he determined that

_____

[3]     Due to the limits of Electronic Case Filing, a copy of such unpublished decision is placed in the electronic docket through incorporation of the Westlaw citation.

plaintiff was restricted to work that involved detailed, non-complex instructions in a low stress setting, defined as occasional changes in the work setting, with no exposure to crowds and production rate pace work, and that such work need to deal with things rather than people. Tr., at p. 26. Such RFC determination is supported by substantial evidence. Although the ALJ did not explicitly discuss all of plaintiff's impairments which appeared in the record, his decision shows that he adequately considered the entire record, thoroughly discussed the evidence relating to all of plaintiff's impairments, and then considered the combined effect of plaintiff's impairments in determining RFC. Substantial evidence supports the ALJ's RFC finding.

### 3. Second Assignment of Error

In her second assignment of error, plaintiff contends that the ALJ failed to comply with the requirements set forth in 20 CFR §§ 404.1535(B)(2) and 416.935(B)(2), in that he failed to define what specific limitations would remain in the event claimant ceased abuse of drugs and/or alcohol.

The ALJ found that without the effects of substance abuse, plaintiff's "remaining limitations would cause more than a minimal impact on [plaintiff's] ability to perform basic work activities; therefore, [plaintiff] would continue to have a severe impairment or combination of impairments" Tr., at p. 26. Plaintiff argues that

(1)    by not defining the specific limitations which would remain if plaintiff stopped her substance abuse, the ALJ did not comply with 20 C.F.R.§§ 404.1535(b)(2), 416.935(b)(2); and

(2)    the ALJ did not "delineate any specific connection between the limitations found in his original assessment including drug/alcohol abuse, and which of them are caused by the substance abuse," Plaintiff's Brief, at p. 10.

For the reasons discussed below, the ALJ properly considered plaintiff's substance abuse in evaluating her disability claim in accordance with the regulations. Further, substantial evidence supports the ALJ's finding that substance abuse was a contributing factor material to plaintiff's disability.

### a.    Considering the Impact of Substance Abuse

When determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability, the regulations provide as follows:

**(b) Process we will follow when we have medical evidence of your drug addiction or alcoholism.**

(1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.

(2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current

disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.

* * *

20 C.F.R. §§ 404.1535(b)(1)& (2). The ALJ found that considering plaintiff's substance abuse, she had severe impairments of depression, anxiety, obsessive compulsive disorder, and poly-substance abuse. Tr., at p. 20. The ALJ then found that even in the absence of substance abuse, plaintiff would continue to have a severe impairment or a combination of severe impairments. Tr., at p. 26.

While plaintiff is correct that the ALJ did not expressly list which severe impairments would remain in the absence of substance abuse, it is equally clear from the ALJ's RFC findings which functional limitations would remain in the absence of substance abuse, specifically, that plaintiff would have the RFC to:

perform work at all exertional levels, since she has no exertional impairments. She can perform detailed, but not complex, instructions in a low stress setting, defined as occasional changes in the work setting. Due to her paranoid tendencies, she should not be exposed to crowds and should deal with things rather than people in a job not involving production rate pace work. In addition, when using drugs,[Plaintiff] could miss 15 minutes one day and 4 hours the next day and this would occur on a daily basis

Tr., at p. 21. Most telling, the ALJ's RFC finding without the effects of substance abuse, included the same limitations as his RFC finding when substance abuse was accounted for, except for the limitation that she would potentially miss work on a

daily basis.  Tr., at p. 26.  While the court would have preferred the ALJ to spell out the impairment that remained, the error is harmless as the ALJ's RFC assessment gives clear guidance as to what limitations would remain in the absence of substance abuse.

> **b.** **Failure to Provide an Adequate Basis for Determining that Certain Impairments are Related to Substance Abuse**

Plaintiff next contends that the ALJ assumed that her limitations were caused by substance abuse rather than by her various mental conditions and did not provide an adequate basis for his finding that plaintiff's anxiety and depression were related to her substance abuse.  Plaintiff's Brief, at p. 10.

Review of the ALJ's decision reveals, however, that the ALJ relied on and cited substantial evidence that  supports his determination.  See Tr., at pp. 21-25. Such determination is, however, particularly difficult where the claimant is a younger individual who has had a substance abuse problem  throughout her working life, as pointed out by the ALJ:

> It is difficult to evaluate this claimant because of the fact that she has not had a significant period of time when she was not abusing drugs.  The medical evidence shows that the claimant has never stopped using drugs for any extended period of time and that her illnesses are drug-related. Although advised to stop abusing alcohol and drugs, she has continued to drink and to use illegal drugs occasionally.

Tr., at p. 24.

The medical evidence of record clearly supports the ALJ's conclusion. When plaintiff was admitted to the Rutherford Hospital on May 27, 2004, she was diagnosed with major depression with psychotic features, anxiety disorder, and unspecified substance abuse. Tr., at p. 213. As the ALJ noted, Tr., at p. 24, at that time a toxicology screen was positive for cocaine, cannabinoid, and benzodiazepine. Tr., at p. 212. Dr. Mauney stated that plaintiff's mental status may "clear significantly" as substances "get out of her system." Tr., at p. 213. When plaintiff was discharged on June 2, 2004, her depression had improved and her suicidal thoughts had remitted Tr., at p. 209. The ALJ additionally noted, Tr., at p. 23, that when plaintiff was hospitalized from September 28, 2004, to October 4, 2004, she was diagnosed with a *drug-induced* mood disorder. Tr., at p. 315.

The administrative record further provides substantial evidence that in the absence of substance abuse, plaintiff experienced an improved ability to function.

- On January 28, 2002, plaintiff informed Dr. Crummie that she was not smoking marijuana or drinking alcohol and Dr.Crummie assigned plaintiff a GAF score of 65, indicating that she was "generally functioning pretty well." Tr., at p. 202. Dr. Crummie also reported that plaintiff was oriented and that her judgment appeared to be good. Tr., at p. 201.

• On September 30, 2004, two days after plaintiff was admitted to the Gaston Memorial Hospital following abuse of cocaine, Tr., at pp. 382, 454, it was noted that her judgment and insight were questionable, and she reported her mood as "still feeling depressed." Tr., at p. 382. Upon her discharge on October 4, 2004, her judgment and insight were fair and she reported her mood as "feeling fine." Tr., at p. 378.

• On October 22, 2004, when plaintiff was in cannabis abuse remission, her mental status was attentive and her thought processes were clear. Tr., at p. 705. Her cognition was alert and oriented. Id. Plaintiff also reported that she was "doing fairly well." Id.

Thus, the ALJ's conclusion finds substantial support in the evidence of record as demonstrated above.

c.     **Reliance on Substance Abuse Evidence After Alleged the Date of Alleged Onset**

In her final argument, plaintiff contends that it was error for the ALJ to consider and rely on "substance abuse evidence" that post-dated her alleged onset date. Plaintiff's brief, at p.10. In support of such argument, plaintiff points out that her mother testified that her emotional problems began in the fifth or sixth grade. Id., at pp.10-11.

The ALJ properly and necessarily considered evidence that post-dated plaintiff's alleged date of onset, inasmuch as the regulations require plaintiff to establish the existence of a disabling impairment *after* her alleged onset date of November 22, 2000. See 20 C.F.R.§§ 404.1512 (c) & 416.912 (c). In this case, probative evidence concerning the profound impact substance abuse has on plaintiff and her impairments is found in the hospital and physician notes that post-date alleged onset. Likewise, such record sheds a great deal of light on plaintiff's mental health when she is in remission from controlled substances, which appears to occur during hospitalizations. There simply is no legal or logical basis for plaintiff's argument that the ALJ be constrained to review only evidence that predates onset. Accordingly, the ALJ properly found that plaintiff was not disabled because substance abuse was a contributing factor material to her disability.

## E.    Conclusion

The undersigned has carefully reviewed the decision of the ALJ, the transcript of proceedings, plaintiff's motion and brief, the Commissioner's motion and responsive pleading, and plaintiff's assignments of error. Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence. See Richardson v. Perales, supra; Hays v. Sullivan, supra. Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion," <u>Richardson v. Perales</u>, <u>supra</u>, the undersigned must recommend to the district court that plaintiff's Motion for Summary Judgment be denied, the Commissioner's Motion for Summary Judgment be granted, and that the decision of the Commissioner be affirmed.

## RECOMMENDATION

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that

(1)     the decision of the Commissioner, denying the relief sought by plaintiff, be **AFFIRMED**;

(2)     the plaintiff's Motion for Summary Judgment (#26) be **DENIED**;

(3)     the Commissioner's Motion for Summary Judgment (#21) be **GRANTED**; and

(4)     this action be **DISMISSED**.

## Time for Objections

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), and Rule 72, Federal Rules of Civil Procedure, written objections to the

findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).

Signed: January 28, 2011

Dennis L. Howell
United States Magistrate Judge